IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEROY RILEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-172E |
| ) | |
| CHARLES SIMPSON, KERRI CROSS, ) | Judge Sean J. McLaughlin |
| DAVID MCCOY, CHARLES M. SHANE, ) | Magistrate Judge Susan Baxter Paradise |
| sued in their individual and official ) | |
| capacities, MR. GASTON sued in his ) | |
| individual capacities ) | |
| ) | |
| ) | |
| Defendants. ) | Electronically Filed. |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I. STATEMENT OF THE CASE

Plaintiff, Leroy Riley, inmate number FQ-8672, is a *pro se* prisoner currently in the custody of the Pennsylvania Department of Corrections (DOC) in the State Correctional Institution at Forest (SCI-Forest). Plaintiff brings the instant action pursuant to 42 U.S.C. §1983 against the above named individuals (hereinafter the "Commonwealth Defendants").

According to the Plaintiff, Defendant Simpson is a "correctional captain at SCI Pittsburgh, where the event [described] took place…" Simpson is "in charge of the segregation unit at Pittsburgh" and "one of three appeal board members responsible for reviewing all administrative appeals of disciplinary charges filled (sic) by Pittsburgh inmates…." (*See* Doc. # 1, ¶ 11). Defendant Cross is a "hearing examiner at Pittsburgh…responsible for conducting disciplinary hearings for prisoners…." (*Id.,* ¶ 10). Defendant McCoy "is one of three appeal

1

board member (sic) at Pittsburgh, he is responsible for reviewing all administrative appeals of disciplinary charges filed by Pittsburgh inmates…." (*Id.,* ¶ 9). Defendant Shane is also an appeal board member (*Id.*, ¶ 10). Defendant Gaston is a Correctional Officer (CO) at SCI Pittsburgh whose duties include investigating rules violations by Pittsburgh inmates and "conducting write-ups for the violations…" (*Id.,* ¶ 12).

Plaintiff specifically alleges that on May 27, 2004, he was removed from his cell for striking his cellmate (*Id.,* ¶ 13). Defendant Cross conducted a disciplinary hearing into this May 27th incident (*Id.,* ¶ 17). According to Plaintiff, Cross denied him the opportunity to call witnesses and continued the hearing in order to determine the credibility of two CSI's (*Id.,* ¶ 18).[1] Cross reconvened the hearing at a later date. She informed Plaintiff that she had a telephone call and CO Gaston had information from the two CSI's implicating Plaintiff in the May 27th assault (*Id.,* ¶ 19). Cross asked Plaintiff how he plead to the allegations of misconduct (*Id.,* ¶ 20). Plaintiff requested a postponement in order to prepare his defense in light of the new information from Gaston and the CSI's (*Id.,* ¶ 21). Cross denied this request, found Plaintiff guilty, and imposed punishment of sixty (60) days segregation (*Id.,* ¶ 21). Plaintiff filed an administrative appeal to the board consisting of Defendants Simpson, McCoy, and Shane (*Id.,* ¶ 23). The board denied this appeal (*Id.,* ¶ 24).

Plaintiff contends that he was placed in "confinement in segregation in violation of due process of the Fourteenth Amendment of the United States Constitution." (*Id.*, p. 1, "Preliminary Statement"). He submits that this is a civil rights violation under 42 U.S.C. §1983 (*Id.*). Specifically, Plaintiff alleges that Defendant Simpson erred in not overruling Defendant Cross' determination, in placing Plaintiff in administrative custody, failing to act on the unconstitutional

---

[1] "Confidential Security Informant." CSI's are inmates who act as informants.

acts of his subordinates, and failing to prevent these unconstitutional acts (*Id.,* ¶¶ 26, 27). Defendants McCoy and Shane erred in not overruling Defendant Cross' determination (*Id.,* ¶ 26). Defendant Cross violated Plaintiff's rights by refusing to call his witnesses after receiving information from the CSI's, by receiving the CSI information by phone, and by not properly assessing the credibility of the CSI's. She further erred in not making specific findings of fact and in finding him guilty even though the evidence did not meet the preponderance standard (*Id.,* ¶ 28). Plaintiff faults Defendant Gaston "for his indirect participation….by setting in motion a series of events that he kn[e]w or reasonably should have [known] cause (sic) a constitutional violation, also technical error in his report affected (sic) the plaintiff['s] ability to understand and defend the charge's (sic)…." (*Id.,* ¶ 29)

## II. STANDARD OF REVIEW

"A motion to dismiss pursuant to [Fed.R.Civ.P] 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997)(citing Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986). 'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' *Id.* (quoting Scheuer v. Rhodes, 416 U.S. 232, 236, 84 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974)." Maio v. Aetna, 221 F.3d 472, 481-482 (3d Cir. 2000).

## III. ARGUMENT

### A. SIXTY DAYS CONFINEMNENT IN DISCIPLINARY CUSTODY DOES NOT TRIGGER THE PROCEDURAL PROTECTIONS OF THE DUE PROCESS CLAUSE.

In Sandin v. Conner, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300 (1995) the Supreme Court held that only where the disciplinary custody "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" does a liberty interest protected by the Due Process Clause arise. *See also* Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000). No due process is required when there is no liberty interest at stake. Brown v. Blaine, 833 A.2d 1166, 1172 (Pa.Cmwlth. 2003)("If a prisoner had no protected liberty interest in remaining free of disciplinary custody, then the state owes him no process before placing him in disciplinary confinement.") It stands to reason that when no due process is owed a Plaintiff cannot sustain a 1983 action for alleged shortcomings in a procedure that does not even have to exist.

Plaintiff admits that the final result of the supposedly flawed hearing/appeal process was sixty (60) days disciplinary custody (*See* Doc. # 1, ¶ 21). That is all. Such a brief period in disciplinary custody fails to create a liberty interest triggering due process protection. *See* Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997)(15 months in administrative custody "did not deprive [plaintiff] of a liberty interest and that he was not entitled to procedural due process protection."); Smith v. Mensinger, 293 F.3d 641, 652 (3d Cir. 2003)( 7 months custody not atypical); Rauso v. Vaughn, 2000 WL 873285, Slip op. at 7)(E.D. Pa. 2000)(60 days in the Restricted Housing Unit not atypical).

In Brown, supra, 833 A.2d 1166, prison officials placed Mr. Brown, an inmate in the Pennsylvania prison system just like our Plaintiff, into the Restricted Housing Unit (RHU) at SCI-Greene. Prison officials placed our Plaintiff into the RHU. The Court stated, "Brown has not pled any facts to indicate his liberty interests were implicated by his confinement at SCI-Greene…." Brown, supra, 833 A.2d at 1172. The same is true in the instant case.

4

Mr. Brown was later transferred to the Long Term Segregation Unit (LTSU), an even more restrictive type of disciplinary confinement reserved for the most incorrigible prisoners, *see* <u>Rivera v. Pennsylvania Department of Corrections,</u> 837 A.2d 525, 529 (Pa.Super. 2003), for 120 days. The <u>Rivera</u> Court described the RHU and a second unit as "somewhat less restrictive disciplinary custody units" than the LTSU. <u>Rivera, supra,</u> 837 A.2d at 529. Despite the fact that Mr. Brown was in the LTSU for 120 days, the <u>Brown</u> Court still found that even that failed to satisfy the <u>Sandin</u> "atypical and significant hardship" standard:

> [n]othing in the complaint alleges any condition or confinement that was appreciably different from the conditions of other similarly situated inmates or that 120 days in restrictive custody could constitute an atypical scenario. Because Brown's confinement in the LTSU did not impose an "atypical and significant hardship" on Brown in relation to ordinary prison life, Brown's transfer to the LTSU did not trigger a liberty interest and no process is due even if the transfer resulted in a less favorable living situation.

<u>Brown, supra,</u> 833 A.2d at 1172 (citation omitted). If spending twice as long in a more restrictive form of disciplinary custody does not meet the <u>Sandin</u> standard, Defendants submit that Plaintiff's situation surely does not.

Moving prisoners within a certain prison or within a prison system is nothing more than a prisoner placement issue. The Third Circuit has acknowledged that prisoner placement is not a due process issue. <u>Smith, supra,</u> 293 A.2d at 653, *citing* <u>Sandin, supra,</u> 515 U.S. at 486. *See also* <u>Wilson v. Horn,</u> 971 F.Supp. 943, 947 (E.D. Pa. 1997)(Inmate "has no federal constitutional right to a particular custody status…."); <u>Johnson v. Hill,</u> 910 F.Supp. 218, 220 (E.D. Pa. 1996)("…absent a state-created liberty interest that does not exist in Pennsylvania, prisoner placement is a matter of prison administration."). At base, Plaintiff's complaint is nothing more

5

than a disagreement with prison officials over where he was housed. This does not rise to the level of a constitutional violation.

### B. PLAINTIFF'S CLAIMS ARE BARRED BECAUSE HE FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES AND IS NOW PROCEDURALLY DEFAULTED FROM DOING SO.

42 U.S.C. §1997e(a) of the Prison Litigation Reform Act mandates that "[n]o action shall be brought with respect to prison conditions under [§1983] or any other Federal Law, by a prisoner…until such administrative remedies as are available are exhausted." This exhaustion requirement applies to all inmate suits regardless of whether they refer to general prison conditions or a particular incident. Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 984 (2002).

In Bartelli v. Lewis, 2005 W.L. 2300362, Slip. Op. at 3 (M.D. Pa. 2005), the court stated that "the Pennsylvania Department of Corrections (DOC) has an administrative remedy procedure with respect to inmate disciplinary action, namely DC-ADM 801…Under DC-ADM 801 the Program Review Committee ("PRC") initially reviews the appeal of an inmate challenging his finding of guilt of a misconduct charge. The inmate then has the right to appeal the decision of the PRC to the prison's superintendent, and final appeal is to the Pennsylvania DOC Chief Hearing Examiner. The inmate is required to appeal the decision of the superintendent to the Chief Hearing Examiner within seven (7) days of the superintendent's decision."

Plaintiff explains in his Complaint that he had his initial disciplinary hearing in front of Cross and that he appealed that decision to the "appeal board" comprised of Defendants Simpson, McCoy, and Shane without success. This "appeal board" is the "PRC" mentioned above. The documents attached to the Complaint reveal that Plaintiff did indeed appeal to the

6

PRC and the allegation of misconduct was affirmed. It is in the next steps of the 801 process, appealing to the Superintendent and then to the Chief Hearing Examiner, where plaintiff failed.

Attached to the Complaint is a September 14, 2004 letter from the Chief Hearing Examiner to Plaintiff stating that his appeal was incomplete and that the Hearing Examiner's Office had "[s]ent for a copy of the Superintendent's appeal response." Attached to the Complaint is another letter dated September 20, 2004 from the Hearing Examiner's Office to Plaintiff informing him that he had never appealed the PRC's decision to the Superintendent as required under 801. The Hearing Examiner also informed Plaintiff that he was not being granted "a right to appeal if [the appeal] would otherwise be untimely…." Also attached to the Complaint is a January 5, 2006 letter from Superintendent Assistant Thomas W. Seiverling to Plaintiff which states, "I have reviewed both your institutional record and the files in the superintendent's office and I can find no indication that any appeal of misconduct…was ever received by the superintendent. As of this date, the time period for appealing this issue has long since expired."

Plaintiff never appealed the PRC's decision to the Superintendent as required under 801, nor has he perfected a final appeal to the Chief Hearing Examiner as required under 801. The time to do so has long since passed and Plaintiff is procedurally defaulted. *See* Spruill v. Gillis, 372 F.3d 218 (2004). Since Plaintiff has failed to exhaust all administrative remedies under DC-ADM 801 and is now procedurally defaulted from doing so, his claims should be dismissed.

### C. DEFENDANTS SIMPSON, CROSS, MCCOY, AND SHANE SUED IN THEIR OFFICIAL CAPACITY ARE NOT "PERSONS" FOR PURPOSES OF 42 U.S.C. §1983.

In order to prove a 1983 claim, Plaintiff must prove, *inter alia,* that the conduct complained of was committed by a "person." Paratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct.

1908 (1981); Piecknick v. Commonwealth of Pennsylvania, 36 F.3d 1250, 1256 (3d Cir. 1984). State employees "acting in their official capacities" are not "persons" under 1983. Will v. Michigan, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989) See Hafer v. Melo, 502 U.S. 21, 112 S.Ct. 358 (1991).

In the caption to this action, Plaintiff makes it clear that he suing Defendants Simpson, Cross, McCoy, and Shane in both their "individual and official capacities…." (*See* Doc. # 1, p. 1). These individuals sued in their official capacities are not "persons" within the meaning of §1983 and the claims against them should be dismissed.

### D. THE ELEVENTH AMENDMENT BARS SUIT AGAINST DEFENDANTS SIMPSON, CROSS, MCCOY, AND SHANE SUED IN THEIR OFFICIAL CAPACITIES.

The Eleventh Amendment bars suit in Federal Court against states, states agents, and state instrumentalities. Regents of the University of California v. Doe, 519 U.S. 425, 429, 117 S.Ct. 900 (1997). *See* Cory v. White, 457 U.S. 85, 102 S.Ct. 2325 (1982); Penhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900 (1984).[2] Individual State employees who are sued in their official capacity for monetary damages are immune from suit under the Eleventh Amendment. Edelman v. Jordan, 415 U.S. 651, 662-663, 94 S.Ct. 1347 (1974); Kentucky v. Graham, 473 U.S. 159, 165-167, n. 14, 105 S.Ct. 3099 (1985); Will, *supra*, 491 U.S. at 71.

Plaintiff requests on page 6, paragraph H of his Complaint that this Court "[a]ward compensatory damages jointly and severly (sic) against defendant (sic)…." He asks for

---

[2] This immunity can be lost in two ways. One, by Congressional abrogation. Congress has not abrogated the States' sovereign immunity for suits in Federal Court. *See* Quern v. Jordan, 440 U.S. 342, 99 S.Ct. 1139 (1979). Two, by the State waiving the immunity and agreeing to suit. There is no question that the Commonwealth of Pennsylvania has preserved its Eleventh Amendment immunity and has not consented to suit in Federal Court. Laskaris v. Thornburg, 661 F.2d 23, 25 (3d Cir. 1981); Helfrich v. Commonwealth of Pennsylvania, 660 F.2d 88, 90 (3d Cir. 1981).

"[p]unitive damages against defendant, Simpson, McCoy, Cross, Shane, Gaston" in paragraph I. Defendants Simpson, Cross, McCoy, and Shane sued in their official capacity for monetary damages are immune from suit.

### E. DEFENDANT SIMPSON'S FAILURE TO ACT ON THE PURPORTED UNCONSTITUTIONAL BEHAVIOR OF HIS SUBORDINATES FAILS TO STATE A CLAIM UNDER 1983.

As with any defendant in a 1983 action, Plaintiff must show a supervisor Defendant's direct involvement in the alleged wrong. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). It is not enough to simply state that a Defendant is a supervisor therefore he/she is responsible for the alleged misconduct. A §1983 claim cannot be predicated upon a theory of vicarious liability or *respondeat superior*. Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976).. Moreover, "…while supervising public officials may not in any way authorize, encourage, or approve constitutional torts, they have no affirmative constitutional duty to train, supervise, or discipline so as to prevent such conduct." Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986). A supervisor's official misconduct must be more than mere failure to act in order to establish a 1983 violation. Commonwealth of Pennsylvania v. Porter, 659 F.2d 306, 336 (3d cir. 1981).

Plaintiff faults Defendant Simpson for "failing to act" on the due process violations and unconstitutional behavior of his subordinates (*See* Doc. # 1, p. 5, paragraph 2). Such an allegation fails to state a claim under §1983.

### F. PLAINTIFF'S ALLEGATION OF GASTON'S "INDIRECT PARTICIPATION" IN THESE EVENTS DOES NOT STATE A CLAIM UNDER §1983

Plaintiff faults Defendant Gaston "for his inderect (sic) participation of the plaintiff due process right violation…." (*Id.,* ¶ 29). In order to establish a 1983 claim, the Plaintiff must show a direct causal link between the wrong and the Defendant. Rizzo v. Goode,

9

423 U.S. 362, 96 S.Ct. 598 (1976).  Liability can only be imposed when that Defendant played an "affirmative part" in the alleged misconduct.  Chincello v. Fenton, 805 F.2d 126, 133-134 (3d Cir. 1986).  "Indirect participation" is not a "direct link" nor an "affirmative part" of the alleged misconduct.  The claim against Defendant Gaston should be dismissed.

### G.  PLAINTIFF FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO 42 U.S.C. §1997e(e) OF THE PRISON LITIGATION REFORM ACT IN THAT THERE WAS NO PHYSICAL INJURY.

42 U.S.C. §1997e(e) reads that "[n]o Federal Civil Action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Plaintiff writes at several points on page 6 of his Complaint that the Defendants in different ways caused him "punishment and emotional injury" by their acts.  No where in the Complaint does Plaintiff mention that he suffered any physical injury in this matter.  This case should be dismissed pursuant to the Prison Litigation Reform Act

                                        Respectfully submitted,

                                        **Thomas W. Corbett, Jr.**
                                        Attorney General

                                         /s/ Robert A. Willig
                                         ROBERT A. WILLIG
Office of Attorney General               Senior Deputy Attorney General
6th Floor, Manor Complex                 Attorney I.D. No. 53581
564 Forbes Ave.
Pittsburgh, PA  15219
Phone: (412) 565-5696
Fax:   (412) 565-3019


Date:  May 12, 2006

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Brief in Support of Motion to Dismiss was served upon the following, by first-class mail this 12th day of May, 2006

Leroy Riley #FQ-8672
SCI-Forest
P.O. Box 945
Marienville, PA 16239-0945

/s/ Robert A. Willig
Robert A. Willig
Senior Deputy Attorney General