IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEROY RILEY,            )<br>              Plaintiff         )<br>                                )<br>       v.                       )<br>                                )<br>CHARLES SIMPSON, et al.,  )<br>              Defendants   ) | C.A. No. 05-172 Erie<br><br>**District Judge McLaughlin**<br>**Magistrate Judge Baxter** |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that Defendants' motion to dismiss [Document # 22] be granted**.**

**II.    REPORT**

On September 1, 2005, Plaintiff Leroy Riley, an inmate formerly incarcerated at the State Correctional Institution at Pittsburgh, Pennsylvania ("SCI-Pittsburgh"), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.[1]  Named as Defendants are: Charles Simpson, correctional captain at SCI-Pittsburgh ("Simpson"); Kerri Cross, hearing examiner at SCI-Pittsburgh ("Cross"); David McCoy, appeal board member at SCI-Pittsburgh ("McCoy"); Charles M. Shane, appeal board member at SCI-Pittsburgh ("Shane"); and Mr. Gaston, appeal board member at SCI-Pittsburgh ("Gaston").[2]

Plaintiff alleges that he was placed in disciplinary custody for a period of sixty (60) days

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania.

[2] Plaintiff has attempted to add David Good, Superintendent at SCI-Pittsburgh, as a Defendant in this case by filing an amended complaint in conjunction with the filing of his brief in opposition to the motion to dismiss; however, Plaintiff was not granted leave to amend his complaint by this Court and, therefore, Superintendent Good has not been appropriately added as a Defendant in this case.

in violation of his due process rights under the fourteenth amendment to the United States Constitution. In particular, Plaintiff alleges that: (i) Defendant Cross violated his rights by refusing to allow him to call witnesses at his misconduct hearing, by receiving information from Confidential Security Informants ("CSI's") by phone, by not properly assessing the credibility of the CSI's, and by not making specific findings of fact (Complaint at ¶ 28); (ii) Defendant Simpson violated his rights by not overruling Defendant Cross's determination, by placing Plaintiff in administrative custody, and by failing to prevent the allegedly unconstitutional acts of his subordinates (Complaint at ¶¶ 26, 27); (iii) Defendants McCoy and Shane violated his rights by not overruling Defendant Cross's determination (Complaint at ¶ 26); and (iv) Defendant Gaston violated his rights "by setting in motion a series of events that he kn[e]w or reasonably should have [known] cause[d] a constitutional violation, also technical error in his report affected [sic] the plaintiff['s] ability to understand and defend the charge's [sic] ...." (Complaint at ¶ 29). As relief for his clams, Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages.

Defendants have filed a motion to dismiss [Document # 22], claiming that Plaintiff has failed to exhaust his administrative remedies and, alternatively, has failed to state a claim upon which relief may be granted. Plaintiff has filed a brief in opposition to Defendants' motion, essentially restating the allegations of his complaint. [Document # 25]. This matter is now ripe for consideration.

### A.     Factual History

On or about May 31, 2004, Plaintiff received a misconduct report stating that two CSI's observed and/or heard Plaintiff hitting his cellmate on May 27, 2004. (Complaint at ¶¶ 13, 14). Defendant Cross conducted a disciplinary hearing with regard to the misconduct report, at which she denied Plaintiff the opportunity to call witnesses and continued the hearing to determine the credibility of the two CSI's. (Complaint at ¶¶ 17, 18). Defendant Cross reconvened the hearing at a later date, at which time she informed Plaintiff that she had a telephone call with Defendant Gaston, who gave sworn testimony that the two CSI's were in a position to hear Plaintiff

arguing with, and subsequently hitting, his cellmate on May 27, 2004. (Complaint at ¶ 19). Defendant Cross then asked Plaintiff how he intended to plead to the allegations, in response to which Plaintiff requested a postponement in order to prepare a defense in light of Defendant Gaston's testimony. (Complaint at ¶¶ 20, 21). Defendant Cross denied Plaintiff's request, found Plaintiff guilty, and sanctioned him to sixty (60) days of disciplinary custody. (Complaint at ¶ 21). Plaintiff appealed Defendant Cross's decision to the Program Review Committee ("PRC"), which consisted of Defendants Simpson, McCoy, and Shane. (Complaint at ¶ 23). In a written decision dated June 9, 2004, the PRC denied Plaintiff's appeal. (Complaint at ¶ 24 and Exhibit 1).

### B.     Standard of Review

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). See also Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. The issue is not whether the plaintiff will prevail at the end but whether he should be entitled to offer evidence in support of his claim. Neitzke v. Williams, 490 U.S. 319 (1989); Scheuer v. Rhodes, 419 U.S. 232 (1974). However, a court need not credit a complaint's "bald assertions" or "legal conclusions" when deciding a motion to dismiss. Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) citing In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1429-30 (3d Cir.1997). Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must only set forth sufficient information to suggest that there is some recognized legal theory upon which relief

can be granted.  See Swierkiewicz.

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "'beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines v. Kerner, 404 U.S. 519, 520-521(1972) quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991).  Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997).  See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same).

### C.     Exhaustion
#### 1.     The Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes.  Porter v. Nussle, 534 U.S. 516 (2002).  See also Concepcion v. Morton,

306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to a recent decision by the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, ___ U.S. ___, ___ 2006 WL 1698937, * 4-7 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id at * 2.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting the defense to plead and prove it. Id.

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

### 2.     The Procedural Default Component of the Exhaustion Requirement

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context.  Spruill v. Gillis,  372 F.3d 218, 228-229 (3d Cir. 2004).[4]  The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id.  Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust his administrative remedies under Pennsylvania Department of Correction's policy DC-ADM 801, an inmate is provided with the opportunity to appeal a misconduct hearing decision through a three step process.  Initially, the inmate may appeal the hearing examiner's decision to the Program Review Committee ("PRC").  If the prisoner is dissatisfied with the PRC's decision, he may appeal the decision to the Superintendent of the institution within seven (7) calendar days of receipt of the written PRC decision.  An unfavorable decision by the Superintendent may then be appealed to the Office of the Chief Counsel, addressed to the Chief Hearing Examiner, within seven (7) calendar days of receipt of the Superintendent's decision.

---

[4] There is a split of authority among the Circuits on this issue.  Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

### 3. Exhaustion and Procedural Default Applied

In this case, the record discloses that Plaintiff filed a timely appeal to the PRC; however, there is conflicting evidence as to when Plaintiff filed an appeal from the PRC's decision to the Superintendent. Defendants claim that Plaintiff did not file an appeal to the Superintendent until December 5, 2004, which resulted in the issuance of a letter from the Superintendent's office stating that "the time period for appealing this issue has long since expired." (Complaint, Exhibits 4 and 5). Plaintiff counters that he did, in fact, file an earlier appeal to the Superintendent, to which the Superintendent failed to respond, thus preventing Plaintiff from seeking further appellate review. (Document # 25 at p. 19). Support for this claim is found in the documents attached to Plaintiff's Complaint, which include a copy of Plaintiff's appeal to the Superintendent, dated September 29, 2004, which is marked received by the Superintendent's office on October 1, 2004. (Complaint, Exhibit 6). However, even if Plaintiff did file an appeal to the Superintendent on September 29, 2004, such an appeal was filed well beyond the seven day appeal period required by DC-ADM 801.

Plaintiff has not provided any evidence that he filed an appeal to the Superintendent earlier than September 29, 2004. In fact, Plaintiff has attached to his Complaint a letter he received from the Chief Hearing Examiner, dated September 20, 2004, which states that Plaintiff had "not yet appealed to the Superintendent of [SCI-Pittsburgh] as required by DC-ADM 801." (Complaint, Exhibit 3). This letter also made clear that it did not "grant [Plaintiff] a right to an appeal if it would otherwise be untimely to pursue that appeal." (Id.). Thus, the record evidence appears to confirm that Plaintiff's initial appeal to the Superintendent occurred on September 29, 2004, nearly four months after the PRC's written decision was issued. As a result, this Court finds that Plaintiff procedurally defaulted on fulfilling the second step of the administrative appeal process and, therefore, Plaintiff has failed to properly exhaust his administrative remedies. Accordingly, this case should be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' motion to

dismiss [Document # 22] be granted.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                S/Susan Paradise Baxter
                                                SUSAN PARADISE BAXTER
                                                Chief U.S. Magistrate Judge

Dated: July 27, 2006

cc:      The Honorable Sean J. McLaughlin
         United States District Judge